**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

JUL 0 6 2017

BY
DEPUTY_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | No. 4:17CR **118** |
| | § | Judge **Crone – Nowak** |
| v. | § | |
| | § | |
| HOWARD GREGG DIAMOND | § | |

## INDICTMENT

THE UNITED STATES GRAND JURY CHARGES:

### Count One

> Violation: 21 U.S.C. § 846
> (Conspiracy to Possess with the Intent to
> Distribute and Distribution of Controlled
> Substances)

From in or about January 2010 and continuing up to and including the date of

this Indictment, in the Eastern District of Texas and elsewhere, the defendant,

**Howard Gregg Diamond,** and others both known and unknown to the grand jury,

did knowingly and intentionally combine, conspire, and agree with another person or

persons known and unknown to the grand jury to possess with intent to distribute and

distribute controlled substances, in violation of 21 U.S.C. § 841, as described below:

**Howard Gregg Diamond** and others known and unknown to the grand jury,

while acting and intending to act outside the usual course of professional practice and

without a legitimate medical purpose, wrote prescriptions for substances containing a

detectable amount of fentanyl, a Schedule II controlled substance; wrote prescriptions

for substances containing a detectable amount of morphine, a Schedule II controlled

Indictment
Page 1

substance; wrote prescriptions for substances containing a detectable amount of oxycodone, a Schedule II controlled substance;  wrote prescriptions for substances containing a detectable amount of oxymorphone, a Schedule II controlled substance; wrote prescriptions for substances containing a detectable amount of methadone, a Schedule II controlled substance; wrote prescriptions for substances containing a detectable amount of hydrocodone, a Schedule II controlled substance; wrote prescriptions for substances containing a detectable amount of alprazolam, a Schedule IV controlled substance; and wrote prescriptions for substances containing a detectable amount of zolpidem, a Schedule IV controlled substance.

### Deaths Resulting from the Conspiracy to Possess with Intent to Distribute and Distribution of Controlled Substances

The following deaths resulted from the conspiracy to possess with the intent to distribute and distribution of the above controlled substances while acting and intending to act outside the usual course of professional practice and without a legitimate medical purpose:

On or about September 19, 2012, T.S. received prescriptions from **Howard Gregg Diamond** for fentanyl, hydromorphone, and alprazolam.  On or about September 19, 2012, T.S. filled the controlled substance prescriptions she received from **Howard Gregg Diamond** at a pharmacy.  On October 20, 2012, the fentanyl and alprazolam prescribed by **Howard Gregg Diamond** resulted in the overdose death of T.S. in violation of 21 U.S.C. § 841(a)(1) and (b)(1).

On or about May 24, 2013, N.K. received a prescription from **Howard Gregg Diamond** for methadone.  On May 24, 2013, N.K. filled the controlled substance prescriptions he received from **Howard Gregg Diamond** at a pharmacy.  On May 26, 2013, the methadone prescribed by **Howard Gregg Diamond** resulted in the overdose death of N.K. in violation of 21 U.S.C. § 841(a)(1) and (b)(1).

On or about July 15, 2014, T.H. received a prescription from **Howard Gregg Diamond** for morphine, oxycodone, alprazolam, and zolpidem.  On July 15, 2014, T.H. filled the controlled substance prescriptions she received from **Howard Gregg Diamond** at a pharmacy. On July 25, 2014, the morphine prescribed by **Howard Gregg Diamond** resulted in the overdose death of T.H. in violation of 21 U.S.C. § 841(a)(1) and (b)(1).

On or about October 8, 2015, R.S. received a prescription from **Howard Gregg Diamond** for methadone, alprazolam, and oxycodone.  On October 10, 2015, R.S. filled the controlled substance prescriptions he received from **Howard Gregg Diamond** at a pharmacy.  On October 16, 2015, the methadone and oxycodone prescribed by **Howard Gregg Diamond** resulted in the overdose death of R.S. in violation of 21 U.S.C. § 841(a)(1) and (b)(1).

On or about February 4, 2016, T.B. received a prescription from **Howard Gregg Diamond** for oxycodone.  On February 4, 2016, T.B. filled the controlled substance prescription she received from **Howard Gregg Diamond** at a pharmacy. On February 15, 2016, the oxycodone prescribed by **Howard Gregg Diamond**

resulted in the overdose death of T.B. in violation of 21 U.S.C. § 841(a)(1) and

(b)(1).

On or about January 21, 2016, H.G. received a prescription from **Howard Gregg Diamond** for oxymorphone and oxycodone.  On January 22, 2016, H.G. filled the prescriptions she received from **Howard Gregg Diamond** at a pharmacy.  On February 14, 2016, the oxymorphone prescribed by **Howard Gregg Diamond** resulted in the overdose death of H.G. in violation of 21 U.S.C. § 841(a)(1) and (b)(1).

On or about May 20, 2016, K.P. received a prescription from **Howard Gregg Diamond** for fentanyl, hydrocodone, and alprazolam.  On or about June 17, 2016, K.P. filled the prescriptions he received from **Howard Gregg Diamond** at a pharmacy.  On July 16, 2016, the fentanyl, hydrocodone, and alprazolam prescribed by **Howard Gregg Diamond** resulted in the overdose death of K.P. in violation of 21 U.S.C. § 841(a)(1) and (b)(1).

All in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2.

### Counts Two- Eight

<u>Violation:</u> 21 U.S.C. § 841
(Possession with the Intent to Distribute
and Distribution of Controlled
Substances)

On or about the dates listed below, in the Eastern District of Texas and elsewhere, the defendant, **Howard Gregg Diamond**, did knowingly and intentionally

possess with intent to distribute and distribute controlled substances, in violation of

21 U.S.C. § 841 as described below:

**Howard Gregg Diamond**, while acting and intending to act outside the usual

course of professional practice and without a legitimate medical purpose, wrote

prescriptions for substances containing a detectable amount of fentanyl, a Schedule II

controlled substance; wrote prescriptions for substances containing a detectable

amount of morphine, a Schedule II controlled substance; wrote prescriptions for

substances containing a detectable amount of oxycodone, a Schedule II controlled

substance;  wrote prescriptions for substances containing a detectable amount of

oxymorphone, a Schedule II controlled substance; wrote prescriptions for substances

containing a detectable amount of methadone, a Schedule II controlled substance;

wrote prescriptions for substances containing a detectable amount of hydrocodone, a

Schedule II controlled substance; wrote prescriptions for substances containing a

detectable amount of alprazolam, a Schedule IV controlled substance; and wrote

prescriptions for substances containing a detectable amount of zolpidem, a Schedule

IV controlled substance. The below listed deaths resulted from **Howard Gregg

Diamond's** possession with the intent to distribute and distribution of the below

listed  controlled substances in violation of 21 U.S.C. § 841.

| Count | On or About Date Prescription Received | Prescription | Patient | On or About Date Prescription Filled | On or About Date of Overdose Death | Drugs Causing Overdose |
|---|---|---|---|---|---|---|
| 2 | September 19, 2012 | fentanyl, hydromorphone, and alprazolam | T.S. | September 19, 2012 | October 20, 2012 | fentanyl and alprazolam |
| 3 | May 24, 2013 | methadone | N.K. | May 24, 2013 | May 24, 2013 | methadone |
| 4 | July 15, 2014 | morphine, oxycodone, alprazolam, and zolpidem | T.H. | July 15, 2014 | On July 25, 2014 | morphine |
| 5 | October 8, 2015 | methadone, alprazolam, and oxycodone | R.S. | October 10, 2015 | October 16, 2015 | methadone and oxycodone |
| 6 | February 4, 2016 | oxycodone | T.B. | February 4, 2016 | February 15, 2016 | oxycodone |
| 7 | January 21, 2016 | oxymorphone and oxycodone | H.G. | January 22, 2016 | On February 14, 2016 | oxymorphone |
| 8 | May 20, 2016 | fentanyl, hydrocodone, and alprazolam | K.P. | June 17, 2016 | On July 16, 2016 | fentanyl, hydrocodone, and alprazolam |

## Counts Nine - Eighteen

<u>Violation</u>:  18 U.S.C. §§ 1347 and 2
(Health Care Fraud and Aiding and
Abetting)

## General Allegations

At all times relevant to this Indictment:

The grand jury incorporates by reference all proceeding paragraphs as if fully stated herein.

## The Medicare Program

1.     The Medicare Program ("Medicare") is a federal health care program providing benefits to persons who are over the age of sixty-five and some persons under the age of sixty-five who are blind or disabled.  Medicare is administered by the Centers for Medicare and Medicaid Services (CMS), a federal agency.  Individuals who receive benefits under Medicare are referred to as "beneficiaries."

2.     Medicare is a "health care benefit program," as defined by 18 U.S.C. § 24(b). It is a public plan affecting commerce in which medical services are provided to individuals and individuals who provide medical services may obtain payments.

3.     Medicare is a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).  It is a program that provides health benefits, and is funded directly by the United States Government.

4.     There was a voluntary Supplemental Insurance Benefit under Medicare that was known as Part B.  Part B pays for the outpatient expenses of physicians, therapists, laboratories, x-rays, and durable medical equipment for use in the home.

5.     The Omnibus Budget Reconciliation Act of 1989 requires all providers and suppliers of Medicare Part B services to submit, within one year from the date of service, claims to Medicare carriers on behalf of Medicare beneficiaries. During this period, providers can file their Medicare Part B claims either electronically or in paper form.

Medicare reimbursement to the provider is made by either an electronic funds transfer or by check payable to the provider and delivered by U.S. mail.

6. In order to obtain reimbursement from Medicare for medical services provided to beneficiaries, providers have to submit claims on form CMS-1500 (formerly known as HCFA-1500 Forms). Providers are paid for their medical services based upon information contained in the CMS-1500 claim forms.

7. The provider must state the following information on the CMS-1500 form: the provider's signed certification that the services and procedures for which the reimbursement is requested were (1) medically necessary for the health of the patient; (2) actually provided by the medical provider making the claim; and (3) adequately documented in the patient's medical treatment records (the provider certification). A provider may authorize and direct office personnel to use a signature stamp to signify this certification on claims prepared and submitted under the provider's direction.

8. Physician providers may utilize the services of a nurse practitioner (NP) in treating their patients. For the services to be compensable under Medicare Part B, the following criteria must be met:

    a. They are the type that are considered physician services if furnished by a doctor of medicine or osteopathy (MD/DO);

    b. They are performed by a person who meets the definition of an NP;

    c. The NP is legally authorized to perform the services in the state in which the services are rendered;

  d. They are performed in collaboration with the MD/DO; and

  e. They are not otherwise precluded from coverage because of one of the

   statutory exclusions.

  9. Direct billing and payment for NP services may be made to the NP, or the

services can be billed "incident to" the physician's services. Direct billed NP services are

compensable at a rate that is approximately 15% less than the rate paid to physicians for

the same services.

  10. In order to have NP services covered as "incident to" the services of a

physician, it must be performed under the direct supervision of the physician as an

integral part of the physician's personal in-office service.

  11. Medicare providers sign an agreement with Medicare in which they state

that they are familiar with Medicare's billing requirements and in which they promise not

to submit false or fraudulent claims.

  12. All payments made by Medicare are made to a provider in the form of a

pre-arranged electronic deposit into the provider's bank account.

  13. From in or around September 2015, and continuing through in or around

April 2017, the exact dates being unknown to the Grand Jury, in the Eastern District of

Texas, and elsewhere, the defendant, **Howard Gregg Diamond**, MD, aided and abetted

by others both known and unknown to the Grand Jury, in connection with the delivery of

and payment for health care benefits, items, and services, did knowingly and willfully

execute, and attempt to execute, a scheme and artifice to defraud a health care benefit

program affecting commerce, as defined in 18 U.S.C. § 24(b), that is, Medicare, and to

obtain, by means of materially false and fraudulent pretenses, representations, and

promises, money and property owned by, and under the control of Medicare, in

connection with the delivery of and payment for health care benefits, items, and services.

### Purpose of the Scheme

14.    It was the general purpose of the scheme and artifice for **Howard Gregg**

**Diamond** to unlawfully obtain money from Medicare through misrepresentations and

violations of Medicare rules.  To this end, **Howard Gregg Diamond** would, among other

things, (a) submit and cause the submission of false and fraudulent claims to Medicare,

and (b) conceal the submission of false and fraudulent claims to Medicare.

### Acts in Execution of the Scheme and Artifice – Billing for Services Not Rendered

On or about the dates specified as to each count below, in the Eastern District of

Texas, and elsewhere, **Howard Gregg Diamond** submitted and caused the submission of

claims to Medicare for approximately the identified dollar amounts, and represented that,

on or about the identified dates of service, the identified patients were treated by himself,

when in fact, **Howard Gregg Diamond** was traveling to the indicated location for the

specified time period, and such patients were treated by an NP, or not at all.

| Count | Medicare Beneficiary HICN | Alleged Date of Service | Trip Dates | Trip Information | Service Billed | Billed Amount |
|---|---|---|---|---|---|---|
| 9 | ***0846A | 9/29/15 | 9/28/15-10/4/15 | Dal - Boston | Office Visit | $117.00 |
| 10 | ***9265A | 7/11/16 | 7/8/16-7/18/16 | DFW-San Diego | Office Visit | $244.00 |
| 11 | ***6546A | 7/12/16 | 7/8/16-7/18/16 | DFW-San Diego | Office Visit | $363.00 |
| 12 | ***0080A | 7/15/16 | 7/8/16-7/18/16 | DFW-San Diego | Office Visit | $244.00 |
| 13 | ***7839A | 3/7/17 | 3/6/17-3/12/17 | DFW-Orlando | New patient office visit | $556.00 |
| 14 | ***4630A | 3/11/17 | 3/6/17-3/12/17 | DFW-Orlando | Office Visit | $420.00 |
| 15 | ***5846A | 3/9/17 | 3/6/17-3/12/17 | DFW-Orlando | Office Visit | $420.00 |
| 16 | ***5846A | 3/9/17 | 3/6/17-3/12/17 | DFW-Orlando | Aspiration or Injection | $500.00 |
| 17 | ***5846A | 3/9/17 | 3/6/17-3/12/17 | DFW-Orlando | Ultrasound | $275.00 |
| 18 | ***5846A | 3/9/17 | 3/6/17-3/12/17 | DFW-Orlando | Injection | $100.00 |

## **Counts Nineteen-Twenty-One**

Violation: 18 U.S.C. §§ 1957 and 2
(Money Laundering and Aiding and
Abetting)

The grand jury incorporates by reference all proceeding paragraphs as if fully

stated herein.

On or about the dates listed for each count below, within the Eastern District

of Texas, **Howard Gregg Diamond** knowingly engaged in the following monetary

transactions by, through, or to a financial institution, affecting interstate or foreign

commerce, involving funds that were the proceeds of criminally derived property and

had a value in excess of $10,000, and were derived from a specified unlawful

activity, with each such transaction constituting a separate count in the indictment:

| Count | Date | Transaction Amount | Specified Unlawful Activity |
|-------|------|--------------------|-----------------------------|
| 19 | 09/02/14 | $15,000.00 | 21 U.S.C. § 841 |
| 20 | 07/30/15 | $12,000.00 | 21 U.S.C. § 841 |
| 21 | 01/11/16 | $13,010.00 | 21 U.S.C. § 841 |

All in violation of 18 U.S.C. §§ 1957 and 2.

## NOTICE OF INTENTION TO SEEK CRIMINAL FORFEITURE

Criminal Forfeiture Pursuant to 21 U.S.C. § 853 and 18 U.S.C. § 982(a)(7)

As a result of committing the offenses charged in this Indictment, the defendant

shall forfeit to the United States any property he may have used or intended to use to

commit or facilitate the offenses and/or property derived from proceeds obtained directly

or indirectly as a result of the commission of the violation of 21 U.S.C. §§ 846, 841.

The defendant shall also forfeit to the United States any property, real or personal, that

constitutes or is derived, directly or indirectly, from gross proceeds traceable to the

commission of the offenses pursuant to 18 U.S.C. § 982(a)(7).

## MEDICAL LICENSE

The government provides notice of its intention to seek forfeiture of the following

specific item of property, including but not limited to: **Howard Gregg Diamond**'s

medical license.

**SUBSTITUTE ASSETS**

Moreover, if, as a result of any act or omission of the defendant, any property

subject to forfeiture:

(a) cannot be located upon the exercise of due diligence;
(b) has been transferred or sold to, or deposited with a third person;
(c) has been placed beyond the jurisdiction of the court;
(d) has been substantially diminished in value; or
(e) has been commingled with other property which cannot be subdivided without difficulty;

the United States intends to seek forfeiture of any other property of the defendant up to

the value of the forfeitable property, including but not limited to all property, both real

and personal owned by the defendant.  As a result of the commission of the offenses

alleged in this Indictment, any and all interest that the defendant has in any such property

is vested in and forfeited to the United States.

All such proceeds and/or instrumentalities are subject to forfeiture by the

government.

A TRUE BILL

GRAND JURY FOREPERSON


BRIT FEATHERSTON
ACTING UNITED STATES ATTORNEY

HEATHER HARRIS RATTAN
Assistant United States Attorney

Indictment
Page 13

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | No. 4:17CR 118 |
| v. | § | Judge |
| | § | |
| HOWARD GREGG DIAMOND | § | |

## NOTICE OF PENALTY

### Count One

Violation:         21 U.S.C. § 846

Penalty:           Not less than 10 years and not more that life imprisonment, a
                   fine not to exceed $10 million, or both; supervised release of
                   at least 5 years; If death or serious bodily injury resulted
                   from the uses of such substances then a term of imprisonment
                   of not less than twenty (20) years or more than life, a fine not
                   to exceed $1,000,000, or both.  A term of supervised release
                   of at least five (5) years.

Special Assessment: $ 100.00

### Counts Two through Eight

Violation:         21 U.S.C. § 841

Penalty:           Not less than 10 years and not more that life imprisonment, a
                   fine not to exceed $10 million, or both; supervised release of
                   at least 5 years; If death or serious bodily injury resulted
                   from the uses of such substances then a term of imprisonment
                   of not less than twenty (20) years or more than life, a fine not
                   to exceed $1,000,000, or both.  A term of supervised release
                   of at least five (5) years.

Special Assessment: $ 100.00

## Counts Nine - Eighteen

Violation:                18 U.S.C. §§ 1347 and 2

Penalty:                  Not more than ten (10) years imprisonment; a fine not to
                          exceed $250,000 (or not more than twice the gross gain), or
                          both; supervised release of not more than three (3) years. If
                          serious bodily injury resulted, then a term of imprisonment of
                          not more than twenty (20) years, a fine not to exceed
                          $250,000 (or not more than twice the gross gain), or both;
                          supervised release of not more than five (5) years.  If death
                          resulted, then a term of imprisonment or any term of years or
                          life, a fine not to exceed $250,000 (or not more than twice the
                          gross gain), or both; supervised release of not more than five
                          (5) years.

Special Assessment: $ 100.00


## Counts Nineteen-Twenty-One

Violation:                18 U.S.C. §§ 1957 and 2

Penalty:                  Not more 10 years imprisonment; a fine not to exceed
                          $250,000, (or not more than twice the amount of the
                          criminally derived property involved in the transaction), or
                          both; supervised release of not more than three (3) years.

Special Assessment: $ 100.00