| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| *versus* | § | CASE NO. 4:17-CR-118 (1) |
| | § | |
| HOWARD GREGG DIAMOND | § | |

**MEMORANDUM AND ORDER**

Pending before the court is Defendant Howard Gregg Diamond's ("Diamond") Emergency Motion for a Reduction or Modification of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) Pertaining to COVID-19 (#103). The Government filed a response (#105) in opposition. United States Pretrial and Probation Services ("Probation") also recommends that the court deny the motion. Having considered the pending motion, the submissions of the parties, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be DENIED.

I.      Background

Pursuant to a binding Rule 11(c)(1)(C) plea agreement, Diamond pleaded guilty to Count One, Conspiracy to Possess with the Intent to Distribute and Dispense and Distributing and Dispensing of Controlled Substances in violation of 21 U.S.C. §§ 846 & 841(b)(1)(A), and Count Nine, Health Care Fraud and Aiding and Abetting in violation of 18 U.S.C. §§ 1347 & 2, of the Second Superseding Indictment. On May 9, 2019, the court sentenced Diamond to a total of 240 months' imprisonment, to be followed by 5 years of supervised release. Diamond is currently housed at FCI Oakdale I, a low security unit of the Oakdale Federal Correctional Complex in Oakdale, Louisiana. His projected release date is July 26, 2034.

Diamond filed the instant motion on May 21, 2020, wherein he requests that the court reduce his sentence to time served and order his release to community supervision with home confinement.  Alternatively, Diamond requests that the court modify his sentence to home confinement for the remainder of his term of imprisonment or until he can be confined at a Bureau of Prisons ("BOP") facility that is free from the COVID-19 virus.  Diamond also requests, in the alternative:  (1) a video evidentiary hearing with limited discovery so he may obtain and present his medical records and testimony of staff and inmates; (2) a stay of his motion until June 8, 2020, to allow for the lapse of at least 30 days after counsel delivered his request for compassionate release and home confinement under the CARES Act to the warden; or (3) an order to the BOP to transfer him to a unit with a lower infection and death rate.  The Government opposes Diamond's motion on the grounds that (1) Diamond failed to comply with the administrative exhaustion requirement under § 3582(c)(1)(A) before seeking relief from the court; (2) Diamond fails to identify extraordinary and compelling reasons to warrant a sentence reduction; and (3) the court lacks statutory authority to grant the relief requested by Diamond.

II.   Analysis

On December 21, 2018, the President signed the First Step Act of 2018 into law.  *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194.  The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> The court, upon motion of the Director of the [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed

> the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction; or the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release."

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release. *See Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP); *Slate v. United States*, No. 5:09-CV-00064, 2009 WL 1073640, at *3 (S.D.W. Va. Apr. 21, 2009) ("Absent a motion from the BOP, the Court lacks authority to grant compassionate release."). The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf. *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019). The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, No. 20-1298, 2020 WL 2845694, at *2 (6th Cir. June 2, 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release."). Thus, before seeking relief from the

court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request. 18 U.S.C. § 3582(c)(1)(A); *Alam*, 2020 WL 2845694, at *2; *Raia*, 954 F.3d at 597.

Diamond's request for compassionate release and home confinement under the CARES Act was delivered to the warden of his facility on or about May 5, 2020. Although Diamond filed his motion before the warden had 30 days to consider his request, the court will assume that the exhaustion requirement has been met and consider the merits of his motion. Diamond contends that extraordinary and compelling reasons exist to modify his sentence because the spread of COVID-19 at his facility is "uncontrolled." Diamond further asserts that he is at risk of severe complications from COVID-19 because he is 59 years old with type 2 diabetes, hypertension, high cholesterol, and metabolic syndrome.

Congress did not define "extraordinary and compelling." Rather, it elected to delegate its authority to the United States Sentencing Commission ("the Commission"). *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); *see also* U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 (U.S. SENTENCING COMM'N 2018) ("USSG"). In Application Note 1 to § 1B1.13 of the USSG, the Commission defined "extraordinary and compelling reasons" to include the following four categories of circumstances: (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has

4

specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason. The court must also consider the factors set forth in 18 U.S.C. § 3553(a),[1] as applicable, and find that the sentence modification is consistent with the policy statements issued by the Commission. 18 U.S.C § 3582(c)(1)(A). The policy statement regarding compassionate release requires a determination that "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

Diamond's request for compassionate release is based on the risks presented by COVID-19, his age, his medical conditions, and the prevalence of COVID-19 cases at his facility. He does not contend that his case falls within the explicitly defined USSG categories for extraordinary and compelling reasons based on medical conditions, age, or family circumstances. Rather, Diamond is invoking the fourth, catch-all category of "other" extraordinary and compelling reasons, which specifically states that the Director of the BOP shall determine whether "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* § 1B1.13 cmt. n.1(D). Although Subdivision D is reserved to the BOP Director, the Commission acknowledged, even before the passage of the First Step Act, that courts are in the position to determine whether extraordinary and compelling circumstances are present. *United States v. Beck*, No. 1:13-CR-186-6, 2019 WL

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable USSG provisions and policy statements; any pertinent policy statement of the Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

2716505, at *9 (M.D.N.C. June 28, 2019) ("Read in light of the First Step Act, it is consistent with the previous policy statement and with the Commission guidance more generally for courts to exercise similar discretion as that previously reserved to the BOP Director in evaluating motions by defendants for compassionate release."); *see Cantu*, 423 F. Supp. 3d at 352 ("[T]he correct interpretation of § 3582(c)(1)(A) . . . is that when a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant granting relief.").

In the case at bar, there is no indication that the BOP Director made a determination regarding the presence of extraordinary and compelling reasons with respect to Diamond for any reason. In exercising its discretion, the court also finds that no extraordinary and compelling reasons exist in relation to his situation. As of June 15, 2020, the BOP reported 22 active, 7 deaths, and 180 recovered cases of COVID-19 among a total of 991 inmates and 10 active, 0 deaths, and 10 recovered cases of COVID-19 among staff at FCI Oakdale I. The Government points out that Diamond's medical conditions that ostensibly increase his risk for contracting COVID-19—type 2 diabetes, hypertension, high cholesterol, and metabolic syndrome—can be controlled with lifestyle changes and medication, steps he was taking at the time of his sentencing. Although Diamond expresses legitimate concerns regarding COVID-19, he fails to establish that the BOP cannot manage the outbreak within his correctional facility or that the facility is specifically unable to treat him, if he were to contract the virus and develop COVID-19 symptoms, while incarcerated. *See Raia*, 954 F.3d at 597 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify

compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Vasquez*, No. CR 2:18-1282-S-1, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence." (quoting *United States v. Koons*, No. 16-214-05, 2020 WL 1940570, at *5 (W.D. La. Apr. 21, 2020))); *United States v. Clark*, No. CR 17-85-SDD-RLB, 2020 WL 1557397, at *5 (M.D. La. Apr. 1, 2020) (finding the defendant had failed to present extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute" and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification"). Diamond has failed to establish that "other" reasons exist that would constitute extraordinary and compelling reasons to reduce or modify his sentence.

The court also finds that compassionate release is not warranted in light of the applicable factors set forth in § 3353(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release). Diamond emphasizes his age, vulnerability to COVID-19, status as a nonviolent offender, low risk of recidivism, cooperative conduct in prison, and release plan. The court, on the other hand, notes that the nature and circumstances of the offenses of conviction entail Diamond's participation in a drug-trafficking conspiracy in which he distributed and dispensed controlled substances resulting in death and his commission of health care fraud, his prescribing controlled substances including fentanyl, morphine, oxycodone, methadone, hydrocodone, hydromorphone, alprazolam, zolpidem, carisoprodol, and diazepam outside the usual course of professional practice and without a

legitimate medical purpose, his causing 7 deaths due to drug overdoses as a result of his prescribing practices, his executing a scheme to defraud Medicare by submitting false claims in which he represented that he treated certain Medicare beneficiaries when he did not either because he was out of town, the patient was treated by an assistant, or the patient was not treated at all, and his 2 prior convictions for disorderly conduct. *See id.* § 3553(a). In view of the foregoing, the court cannot conclude that he would not pose a danger to any other person or to the community, if released from confinement only 1 year into his 20-year term of imprisonment.

Meanwhile, the BOP has instituted a comprehensive management approach that includes screening, testing, appropriate treatment, prevention, education, and infection control measures in response to COVID-19. In response to a directive from the United States Attorney General in March 2020, the BOP immediately began reviewing all inmates who have COVID-19 risk factors, as described by the Centers for Disease Control and Prevention, for the purpose of determining which inmates are suitable for placement on home confinement. *See Collins*, 2020 WL 1929844, at *3. The BOP notes that inmates need not apply to be considered for home confinement, as this is being done automatically by case management staff. As of June 15, 2020, the BOP website indicates that 4,217 inmates have been placed on home confinement in response to the COVID-19 pandemic. The March 2020 directive is limited to "eligible at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities." *United States v. Castillo*, No. CR 2:13-852-1, 2020 WL 3000799, at *3 (S.D. Tex. June 2, 2020). The BOP has the exclusive authority to determine where a prisoner is housed; thus, the court is without authority to order home confinement. 18 U.S.C. § 3621(b); *Castillo*, 2020 WL 3000799, at *3; *see United States v. Miller*, No.

2:17-CR-015-D (02), 2020 WL 2514887, at *1 (N.D. Tex. May 15, 2020) ("[N]either the CARES Act nor the First Step Act authorizes the court to release an inmate to home confinement.").

In short, Diamond has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. *See Koons*, 2020 WL 1940570, at *4-5 (stressing that "the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances"). As the court observed in *Koons*, rejecting the notion that it has "carte blanche" authority to release whomever it chooses, "[t]he Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obligated to release every prisoner." *Id.* Moreover, Diamond's alternative requests are denied because nothing in his motion or the circumstances surrounding his confinement suggest that an evidentiary hearing would change the court's determination; in addition, the court lacks the authority to order the BOP to transfer him to another facility.

Finally, as the Government points out, Diamond's proposed release plan is seriously flawed, as it entails having his parents, who are in their mid-eighties and at high risk for contracting COVID-19, drive more than 400 miles roundtrip to pick him up and transport him to their home in Houston. Attorney General Barr noted in his Memorandum to the BOP dated March 26, 2020, the Department of Justice ("DOJ") has the responsibility of protecting the public, meaning that "we cannot take any risk of transferring inmates to home confinement that will contribute to the spread of COVID-19 or put the public at risk in other ways." Diamond's release plan would do just that—exacerbate the health risk to his parents and put the public at large at risk in other ways.

III.     Conclusion

Accordingly, consistent with the foregoing analysis, Diamond's Emergency Motion for a Reduction or Modification of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) Pertaining to COVID-19 (#103) is DENIED.

SIGNED at Beaumont, Texas, this 15th day of June, 2020.

*[signature: Marcia A. Crone]*

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE